[Nos. 40592-6-I; 40790-2-I.   Division One.   August 31, 1998.]

FIRST CHURCH OF CHRIST SCIENTIST, *Appellant*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

230

*Paul S. Wittenbrock*; and *Mark H. Sidran, City Attorney*, and *Denny E. Anderson, Assistant*, for appellant.

*Charles C. Huber* and *Linda B. Clapham* of *Lane Powell Spears Lubersky*; and *Richard C. Robinson, Kathleen F. Cochran*, and *Aaron Dean* of *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*, for respondents.

BAKER, J. — Washington continues to recognize the doctrine of completion and acceptance, which operates as a defense to contractor liability to third parties when the contractor's work is completed and accepted by the owner. In this case, the alleged act of negligence on the part of the contractor was not part of the contract work, but was instead a matter collateral to the contract work. Under these circumstances, we hold that the doctrine does not apply. Instead, the contractor's liability to third parties is based on established negligence principles.

The rule of nonliability created by the doctrine therefore does not apply to relieve Baugh Construction and Deeny Construction from liability in First Church of Christ Scientist's (the Church) negligence case against them and the City of Seattle (the City). Because the alleged act of negligence against the contractors involved matters collateral to the contract work, applying the doctrine under the circumstances presented by this case would expand the scope of the doctrine. We decline to do so, and hold that the trial court erred by granting summary judgment in favor of Baugh and Deeny.[1]

We also address the City's appeal of summary judgment dismissal of its indemnity claim against Baugh and Group Health, which has been consolidated with the Church's appeal. We hold that the City is not seeking indemnification for its sole negligence because, in its complaint, the Church alleged that Deeny, Baugh and the City were concurrently negligent. The City's indemnity agreement with Baugh/Group Health complies with RCW 4.24.115 and is enforceable. The trial court therefore erred by granting summary judgment and dismissing the City's claims against Baugh/

---

[1]For purposes of this opinion, Baugh and Deeny will be referred to as the contractors, with separate reference to each only when necessary.

Group Health for breach of their duty to defend pursuant to the indemnity agreement.

We reverse both summary judgment orders, and remand to the trial court for trial of (1) the Church's negligence claims against the contractors, and (2) the City's indemnity claims against Baugh/Group Health for breach of their duty to defend.

## FACTS

Group Health hired Baugh as the general contractor for a construction project. One aspect of the project required replacement of a City sewer main. Baugh obtained a construction permit from the City to relocate the sewer main line, and then subcontracted with Deeny to do the work. The Church alleges that the side sewer to its building was connected to the preexisting main line.

Project plans called for Deeny to install the new sewer main and connect it to an existing manhole. According to its vice president, Deeny estimated the location of the Church's side sewer by looking at drawings provided to it by Baugh and by examining the City's sewer card.[2] The City's sewer cards showed that the Church's side sewer connected in close proximity to the location of the manhole. Deeny was aware that the City disclaimed the accuracy of its sewer cards. According to Deeny, it did not see the Church's side sewer during its excavations, and, if the side sewer had been located as depicted on the drawings, it would have. Deeny did not make an independent attempt to locate the side sewer. Deeny's work involved drilling a tunnel under the City street, and it is alleged that in doing so, Deeny severed the Church's side sewer line.

Deeny and Baugh finished their work on the project in July 1992. Thereafter, Group Health's engineer certified that the work was in compliance with the project plans. The Church used its building infrequently, and did not ex-

---

[2]The City maintains sewer cards, which illustrate the approximate location of side sewers and sewer mains.

perience a problem until February 1994. It was not until February 1995 that the Church learned the alleged cause of its problems: its side sewer was not connected to the main line. Testing revealed that the Church's side sewer terminated within a few feet of the manhole.

The Church brought a negligence claim against the City, Deeny and Baugh, seeking damages in excess of $38,000.[3] The City asserted a cross-claim against Baugh and a third-party claim against Group Health, contending that both had breached their indemnity agreement. Both Baugh and Deeny moved for summary judgment, arguing that the Church's negligence claim against them was barred by the doctrine of completion and acceptance.[4] The trial court granted the motions, expressly basing its order on that doctrine. Baugh and Group Health later moved for judgment on the pleadings, including a motion to dismiss the City's claims for indemnification. The trial court treated the motion as one for summary judgment, granted the motion and dismissed the City's claims against Baugh and Group Health. The Church then obtained a voluntary dismissal of all other claims, including its claim against the City.

## DOCTRINE OF COMPLETION AND ACCEPTANCE

Washington has long recognized the doctrine of completion and acceptance, which declares that:

[W]here the work of an independent contractor is completed, turned over to, and accepted by, the owner, the contractor is not liable to third persons for damages or injuries subsequently

---

[3]These damages include approximately $33,000 paid to Deeny in June 1995 to install a new side sewer.

[4]Deeny's motion asserted an additional basis for summary judgment—that there was no evidence of its negligence. Deeny argued that it had not performed the sewer work at the site of the alleged damages, but had subcontracted with another company to do the tunneling work.

suffered by reason of the condition of the work, even though he was negligent in carrying out the contract[.][5]

The doctrine therefore operates as a defense to contractor liability.[6] Initially premised on the notion of privity of contract, the doctrine was later justified by courts on the basis of preventing excessive litigation and the theory that acceptance of the work by the owner was an intervening cause relieving the contractor of liability.[7]

██ The doctrine of completion and acceptance continues to be applied in Washington.[8] Applying the doctrine to the facts of this case, however, would effectively expand the doctrine in a manner that is unwarranted and unsupported by prior case law. Therefore, we hold that the doctrine does not apply in this case, and that the trial court erred by relying on the rule of nonliability for contractors created by the doctrine. We view the facts in the light most favorable to the Church in our review of the trial court's decision to grant the contractor's motion for summary judgment.[9] Summary judgment is proper when the evidence, admissions and pleadings show that there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law.[10]

We hold that if the alleged act of negligence on the part of a contractor is not a part of the contract work, but is

---

[5]*Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 558, 872 P.2d 524 (quoting *Andrews v. Del Guzzi*, 56 Wn.2d 381, 388, 353 P.2d 422 (1960)), *review denied*, 124 Wn.2d 1029 (1994).

[6]*Tennyson*, 73 Wn. App. at 558.

[7]*See Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1087 (Okla. 1997); *see also Thornton v. Dow*, 60 Wash. 622, 636-37, 111 P. 899 (1910).

[8]*Tennyson*, 73 Wn. App. at 558-59 (recognizing that the doctrine has been criticized, but holding that the doctrine has continuing validity in Washington); *see also Tennyson*, 73 Wn. App. at 559 n.9 (fully concurring with majority opinion that contractors immune by virtue of doctrine of completion and acceptance, "to which this court is currently bound by virtue of the rulings of our Supreme Court.") (Kennedy, J., dissenting in part).

[9]*Tennyson*, 73 Wn. App. at 559 (Kennedy, J., dissenting in part).

[10]CR 56(c).

instead a matter collateral to the contract work, the contractor's liability to third parties is based on established negligence principles and the rule of nonliability created by the doctrine of completion and acceptance does not apply.[11] In this context, protection for contractors from liability after completion of a contract must come from the liability-limiting negligence principles of foreseeability and proximate cause.

The Church alleges that while relocating the sewer main, Deeny severed the sewer connection between the sewer main and the Church's side sewer, and that Deeny did not reconnect the line. Deeny's contract with Baugh required it to complete all sewage and drainage systems and sanitary sewerage work in strict accordance with the terms of the contract, and to tunnel a sewer line under the street, if required.

The doctrine of completion and acceptance would apply to these facts if the contract had required Deeny to locate the Church's side sewer, disconnect it from the existing main line and then reconnect it to the relocated main line. Although Deeny was informed that the Church's side sewer was located in reasonably close proximity to the location of its excavation site, its contract with Baugh did not require it to locate the side sewer, disconnect and reconnect it to the new main.[12] The alleged negligence was collateral to the contract, and the doctrine does not apply to relieve

---

[11]*Cf. Wilton v. City of Spokane*, 73 Wash. 619, 623, 132 P. 404 (1913) (doctrine had no application to act of leaving unexploded charge of dynamite under surface of street "not a matter connected with the contract work"); *see also King v. Mason*, 95 So. 2d 705, 709, 712 (La. App. 1957) (in process of installing sewer system, contractor severed gas line and covered it without repair, leaving freely flowing gas; tort committed by contractor was a "mere incident in the performance of his contract with the municipality"), *aff'd*, 234 La. 299, 99 So. 2d 117 (1958). The *Wilton* court ultimately relied on the imminently dangerous exception to the doctrine of completion and acceptance in reaching its holding that the trial court correctly refused the contractor's challenge to judgment entered against it. *Wilton*, 73 Wash. at 623-24.

[12]If the permit from the City requires a contractor to repair damage done while working in the City's right of way, the obligation would be owed to the City. Repair work completed under such an obligation would remain collateral to the relevant contract, that between Baugh and Deeny.

Deeny from liability which may be established under standard negligence principles.[13] The mere fact that the alleged negligence occurred during performance of the contract is not enough to bring the case within the scope of the doctrine.

We hold that the doctrine of completion and acceptance does not apply to this case, and the trial court erred by granting summary judgment to the contractors applying the doctrine. We remand for trial for a determination of the respective liability of Deeny and Baugh to the Church premised on established negligence principles. The Church is entitled to have a jury consider whether the contractors' negligence caused the damage to its building. Given this conclusion, we decline to address the Church's alternative argument that we should adopt the latent defect exception to the doctrine of completion and acceptance.[14]

## CITY'S INDEMNITY CLAIMS

The City seeks to recover damages it incurred defending

---

[13]The contract also provided that Deeny (1) would avoid damage to existing utilities or adjacent property, and, upon notification, would repair damage caused as a result of its own negligence, and (2) was not responsible for damage to unmarked or mismarked utilities. Under the circumstances of this case, however, these provisions are not specific enough to bring the alleged act of negligence within the scope of the contract work, rather than collateral to it.

[14]Although Washington has recognized the "inherently or imminently dangerous" exception to the rule of nonliability, it has neither recognized nor squarely rejected the latent defect exception, which states that a contractor remains liable for an injury caused by a latent defect even after the owner accepts the work. See Andrews, 56 Wn.2d at 388 (Washington recognizes inherently dangerous exception) (citing Wilton, 73 Wash. at 623); Axland v. Pacific Heating Co., 159 Wash. 401, 406-07, 293 P. 466 (1930) (court mentioned that defect was more or less latent, but decided that heating company liable and doctrine did not apply because heating company had duty of continuing inspection and care); Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wn.2d 816, 824, 881 P.2d 986 (1994) (when a legal theory is not discussed in an opinion, that case is not controlling in a future case where the legal issue is properly raised); Brady v. State Paving Corp., 693 So. 2d 612, 613 (latent defect exception) (citing Slavin v. Kay, 108 So. 2d 462 (Fla. 1958)), review denied, 705 So. 2d 10 (Fla. 1997). Deeny also argues that the Church's claims regarding application of the doctrine are premised on the unproved and incorrect assumption that the contractors were negligent. The issue of liability between parties, however, is an issue to be determined at trial. Whether or not the contractors were actually negligent in performing their contracts is immaterial to the determination of whether the trial court erred by applying the doctrine to relieve the contractors from liability as a matter of law.

against the Church's complaint and in pursuing its indemnity claims against Baugh/Group Health. Because the duty to indemnify and the duty to defend arise at different times in a tort proceeding, the City maintains the right to seek those damages notwithstanding dismissal of the claims against it.[15]

The City issued a construction permit apparently signed by a representative of Baugh. The City contends that it issued the permit to Group Health and Baugh, and Group Health does not argue otherwise. Under the permit, the work was to be performed according to plans and specifications approved by the Seattle Engineering Department. The permit contains the following statement: "The City shall be held harmless from any action arising through issuance of this permit." Plans submitted by Baugh were approved by the Seattle City Engineering Department and, according to the City, were therefore subject to performance in accordance with the City's standard specifications.[16] Those specifications contain an indemnification provision that declares:

> The Contractor shall also indemnify, defend, and save harmless any county, city or district and the officers and employees of said county, city or district connected with the Work within the limits of which county, city or district the Work is being performed hereunder all in the same manner and to the same extent as provided above for the protection of the Owner . . . .

Therefore, under the following provision, the City has the same protection as the Owner:

> The Contractor shall defend, indemnify and save harmless the Owner and its officers, employees and agents from every claim, risk, loss, damage, demand, suit, judgment and attorney's fee, and any other kind of expense on account of injury to or death of any and all persons, or on account of property

---

[15]See *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 475, 836 P.2d 851 (1992).

[16]We do not address the argument that the permit does not require compliance with the City's standard specifications. This argument raises factual questions inappropriately considered on summary judgment.

damage of any kind, whether tangible or intangible, or loss of use resulting therefrom arising out of or in any manner connected with the Work performed under this Contract . . . .

If the claim, suit, or action for injuries, death, or damage is caused by or results from the concurrent negligence of (a) the Contractor or its officer, agent, or employee and (b) the Owner or its officer, agent or employee, these indemnity provisions shall be valid and enforceable only to the extent of the Contractor's negligence.

██ An agreement in connection with or collateral to a contract relative to construction purporting to indemnify against liability for damages arising out of damages to property caused by the sole negligence of the indemnitee is against public policy and is void and unenforceable.[17] The City clearly is not entitled to indemnification for damages caused by its sole negligence. Under the statute, however, a similar agreement purporting to indemnify against liability for damages

[c]aused by or resulting from the *concurrent negligence* of (a) the indemnitee or the indemnitee's agents or employees, and (b) the indemnitor or the indemnitor's agents or employees, is valid and enforceable only to the extent of the indemnitor's negligence and only if the agreement specifically and expressly provides therefor . . . [18]

First, we note that in their motions for summary judgment, Baugh/Group Health argued that because the contractors had been dismissed from the action, the only claim remaining was the Church's claim for damages against the City for its sole negligence, and thus, as a matter of law, the City could not seek indemnification for those damages.

To the extent that the trial court relied on this reasoning to grant summary judgment in favor of Baugh/Group Health, it erred. The trial court granted the earlier mo-

---

[17]RCW 4.24.115(1).

[18]RCW 4.24.115(2) (emphasis added).

tions for summary judgment, dismissing the contractors from the case, on the basis of nonliability stemming from application of the doctrine of completion and acceptance. Therefore, the contractors' dismissal from the case was not based on a determination that the contractors were not negligent, but on a ruling that the contractors were immunized from liability.[19] The question of the contractors' negligence remained a live issue before the trial court in relation to the City's claims for indemnity.

According to Baugh/Group Health, the Church sued the City based solely on an allegation that the City was itself negligent. We disagree. In its complaint, the Church alleged that Deeny severed the sewer line based in part on faulty information received from the City, and that:

> 4.1 Defendant's Deeny and Seattle, owed plaintiff a duty of care to avoid causing injury to plaintiff. Both parties breached this duty when they failed to take reasonable steps to identify plaintiff's sewer line before they severed its connection with the main sewer line. Defendant Deeny negligently failed to make additional inquiry into whose sewer line it had disconnected. Defendant Seattle, negligently failed to act on information in its possession, that showed the severed sewer line serviced plaintiff's facility.

> 4.2 Defendant Baugh was negligent for failing to supervise the actions of its subcontractor.

The complaint alleges concurrent negligence.[20] Because the Church alleged that Deeny, Baugh and the City were concurrently negligent, and not that the City was solely negligent, the City is not seeking indemnification for its sole negligence. Therefore, the agreement complies with RCW 4.24.115, and is enforceable. Furthermore, in its answer, the City alleged that if the Church sustained any damage or injury as a result of performance of any work

---

[19]*See Tennyson*, 73 Wn. App. at 559 (the doctrine of completion and acceptance immunizes from liability) (Kennedy, J., dissenting in part).

[20]*See Seattle First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 235, 588 P.2d 1308 (1978) (concurrent tortfeasors are those whose independent acts concur to produce the alleged injury).

contemplated and performed under the permit, the damage was solely the result of the conduct of Group Health, Baugh and Deeny.[21]

We hold that the trial court erred by granting summary judgment and dismissing the City's claims against Baugh/ Group Health for breach of their duty to defend. Baugh/ Group Health was not entitled to judgment as a matter of law. The order granting summary judgment in favor of Baugh/Group Health on the City's indemnity claims is reversed, and the case is remanded for trial.[22]

In conclusion, we reverse summary judgment entered in favor of the contractors, and remand for a trial on the Church's negligence claim against them. We also reverse summary judgment entered in favor of Baugh/Group Health and remand for trial on the City's indemnity claims for breach of their duty to defend.

Reversed and remanded.

KENNEDY, C.J., and AGID, J., concur.

---

[21]This is important because for an indemnity clause to be enforceable, the indemnitee must allege negligence on the part of the indemnitor. *See Brame v. St. Regis Paper Co.*, 97 Wn.2d 748, 751-52, 649 P.2d 836 (1982); *see also Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 128 Wn.2d 745, 755, 912 P.2d 472 (1996) (indemnitee presented sufficient evidence of indemnitor's negligence to avoid summary judgment on its indemnification claim).

[22]*See Redford v. City of Seattle*, 94 Wn.2d 198, 207-08, 615 P.2d 1285 (1980) (indemnity agreement held valid; case remanded for trial to determine what portion of damages attributable to indemnitee).